

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| **KENNETH DON HUMPHRIES,** | ) | **Case No.:** | **10-11006-JDW** |
| | ) | | |
| Debtor. | ) | **Chapter:** | **13** |

| | | | |
|---|---|---|---|
| **KENNETH DON HUMPHRIES,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| v. | ) | **A.P. No.:** | **13-01008-JDW** |
| | ) | | |
| **ROBYN ROGERS,** | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court on the *Complaint to Determine Dischargeability* (the "Complaint")(Dkt. # 1) filed by debtor-plaintiff Kenneth Don Humphries (the "Plaintiff") against defendant-counterclaimant Robyn Rogers (the "Defendant"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b), and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and

1

Proceedings Nunc Pro Tunc Dated August 6, 1984.  This is a core proceeding as set forth in 28 U.S.C. §157(b)(2)(I) and (J).

The Plaintiff and Defendant are divorced.  On February 28, 2010, the Plaintiff filed for chapter 13 protection in this Court.  On July 19, 2010, the Defendant filed a Proof of Claim in the Plaintiff's bankruptcy case for $212,906.91 (Claim 5-1).

The Plaintiff filed the Complaint on February 4, 2013, seeking a declaration that the debts owed to the Defendant are dischargeable in the Plaintiff's bankruptcy case.  The Defendant's claim arose, initially, from the parties' Judgment of Divorce (the "Divorce Decree"), entered in October, 2003, by the Chancery Court of Alcorn County, Mississippi (the "Chancery Court").  The Plaintiff alleges in the Complaint that the debts are in the nature of property division – not domestic support – and are therefore dischargeable in a chapter 13 case.  In her *Amended Answer to the Complaint* (the "Answer")(Dkt. # 19), the Defendant denies that the debts were in the nature of property division, but instead were intended as support, and are therefore nondischargeable pursuant to 11 U.S.C. § 523.[1]  Further, the Defendant counterclaimed that certain other judgments related to the divorce, entered against the Plaintiff by the Chancery Court, are nondischargeable as domestic support obligations.  The Defendant also asserted in her Answer that even if the debts are not domestic support obligations, those debts should be held to be nondischargeable as the debts are the result of Plaintiff's fraud and/or deceit.

A trial on the adversary proceeding was held on May 20, 2014, at which time the Plaintiff, counsel for the Plaintiff, Miranda Linton Williford, the Defendant, and counsel for the Defendant, Dalton Middleton, all appeared.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the "Bankruptcy Code," 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

During opening statements, Defendant's counsel made specifically clear that (with regard to her counterclaims) Defendant would be traveling under §§ 523(a)(4)[2] and (a)(15) exclusively. The Court expressly inquired whether the Defendant was asserting a claim under § 523(a)(5). Defendant's counsel unequivocally stated that no claim was being asserted under § 523(a)(5). As such, the Court must only decide whether the Defendant's claim is nondischargeable pursuant to §§ 523(a)(4) and/or (a)(15).

The Court has considered the pleadings, the testimony offered and evidence admitted, the arguments of counsel and applicable law, and finds and concludes that the Defendant's claim is dischargeable in part, and nondischargeable in part, as set forth below.

# I.   FINDINGS OF FACT[3]

The Plaintiff and the Defendant were married on October 22, 1999, but separated on May 13, 2002.  The Divorce Decree was entered on October 6, 2003 by the Chancery Court. The parties had no children together.  At the time the parties were married, Defendant was employed, owned her own home, and owned rental property.   She also has a college degree and owned stocks worth approximately $150,000.00.

## A.  The Divorce Decree

In the Divorce Decree, the Chancery Court ordered that the parties divide and/or return to one another numerous items of real and personal property.  The only property division or portion of the Divorce Decree at issue here concerns the businesses co-owned by the parties.

---

[2] In her Amended Answer, the Defendant failed to specifically plead § 523(a)(4).  However, at trial, she indicated her desire to travel under § 523(a)(4).  The Plaintiff made no objection. *See* Fed. R. Civ. P. 15(b)(2), made applicable by Fed. R. Bankr. P. 7015.

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such.  To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

The Chancery Court found that (i) H & H Wholesale, Inc., ("H&H") (ii) LeBlanc, Nichols and Page, Inc., ("LNP") (iii) Budget Phone, (iv) Guntown Cash Advance ("Guntown"), and (v) Chadco, were all marital assets. The Chancery Court specifically found that the Plaintiff had drawn money out of the businesses since the parties' separation. In order to compensate the Defendant for the Plaintiff's withdrawals of money, the Chancery Court awarded her the exclusive use, possession and ownership of Guntown. Toward that end, the Plaintiff was ordered to turn over to the Defendant all information, documents, assets and account information related to Guntown. As to the other four businesses, the parties were each awarded a 50% ownership share in each business. By the time the Divorce Decree was entered, H&H was the only business still operating.

A transcript of the Chancery Court's bench opinion (the "Divorce Transcript")(Ex. D-2), incorporated into the Divorce Decree by reference, comprehensively details the Chancery Court's well-reasoned and thorough allocation of property. Based on a reading of the Divorce Transcript, this Court finds that it was not the intention of the Chancery Court to create any form of support or alimony. Rather, the Divorce Transcript is clear that the Defendant did not seek any form of alimony payments, and as such, the Chancery Court did not consider alimony in its decision regarding division of property. (Ex. D-2, pg. 13). Given the parties' respective ages at the time of the marriage, relative financial positions entering the marriage, the brevity of the marriage, and the fact that the couple shared no children, it is unlikely that the Defendant would have been eligible to receive support payments from the Plaintiff in any regard. Instead, the division of property was in the nature of a property settlement.

### B. Motions for Contempt

On September 15, 2008, the Defendant filed an *Amended Complaint for Contempt* in the Chancery Court (the "Contempt Complaint")(Ex. D-1).   A copy of the January 22, 2010, Chancery Court Judgment resolving the Contempt Complaint was admitted into evidence at trial (the "Contempt Judgment")(Ex. D-1).   The Defendant filed the Contempt Complaint due to Plaintiff's failure to comply with the Divorce Decree, including the failure to assist in the audits of the companies jointly owned by the parties, failure to pay two (2) outstanding notes as provided for in the Divorce Decree, and failure to provide the Defendant with certain information and documents pertaining to the jointly-owned businesses.   The Chancery Court ultimately found that the Defendant was entitled to a judgment of $212,906.91, plus interest at the rate of eight-percent (8%) per annum from the date of entry of the Contempt Judgment (January 22, 2010).   The Contempt Judgment award was calculated based on findings further discussed below.

In the Divorce Decree, the Plaintiff was directed to pay two outstanding notes, totaling $77,194.40, secured by a building owned by LNP (the "Notes").   The Plaintiff was unable to pay the Notes.   When the building was subsequently scheduled for a foreclosure sale, the Defendant, as co-owner of LNP, initiated a partition sale to save her interest in the property.   The property was sold to the Defendant, as the highest bidder, for $101,000.00 on September 23, 2004.   The Notes were paid out of the proceeds of that sale.   The Chancery Court determined that the Defendant was entitled to a judgment against the Plaintiff for $38,922.73 as a result of the Plaintiff's failure to act and contempt stemming from this property and payment of the Notes. Outside of the Notes, there is no mention in the Contempt Judgment of any liabilities of LNP. Similarly, at trial before this Court, no such evidence was admitted or testimony provided.

As for division of other assets of LNP, although neither party was certain when the company ceased operations, both agree that it was defunct at the time of the 2004 partition sale. The Contempt Judgment provided that no testimony was given or evidence presented regarding other assets of LNP, and therefore the Defendant was only entitled to the Contempt Judgment for $38,922.73. No evidence was presented at the trial before this Court to contradict the Chancery Court's finding that LNP owned no other assets.

Budget Phone ceased operations sometime around June 2003. Based on the testimony of the parties, the Chancery Court found that Budget Phone operated out of the same building as LNP (sold at the partition sale), and had no other assets or liabilities. As such, the Chancery Court stated in the Contempt Judgment that there was no way to accurately calculate the value of the business – to which the Defendant was entitled half – except for commissions collected by the company. The Chancery Court found that based on figures presented at the contempt hearing, a judgment for $3,887.78 (which represented half of commissions collected from the date of separation to the date of divorce) was due to be entered against the Plaintiff. No information, evidence or testimony was presented to this Court at trial to more accurately calculate the value of the business.

The Chancery Court found that there was almost no information provided regarding the Chadco business. As such, the Chancery Court declined to award the Defendant a money judgment for her interest in that company. There was no evidence presented at this trial to contradict the Chancery Court's findings in that regard.

H&H was the only business still operating at the time the Divorce Decree was entered, but it also ceased operations in 2004. The Chancery Court found that due to the Plaintiff's failure to comply with the auditing requirements established through the Divorce Decree, there

was no way to conclusively or accurately establish the value of the business. The amount eventually reached by the Chancery Court - $138,736.00 – was calculated using the 2002 book net worth of the business for a six-month period. The Chancery Court found that this was the only evidence presented that actually correlated to the value of the business. No evidence was presented to this Court regarding the value of H&H. The Plaintiff testified at trial that he closed the business simply because it had become unprofitable. This testimony was uncontroverted.

As previously stated, the Defendant was awarded 100% ownership of Guntown in the Divorce Decree. However, the Chancery Court found, based on the testimony of the court-appointed accountant, that the Plaintiff had withdrawn $11,180.42 from Guntown and transferred it to H&H during the separation period. Plaintiff also withdrew $21,512.08 in cash from Guntown and kept it for his own benefit. At the time, Plaintiff was entitled to withdraw up to $12,400.00 (ostensibly as salary (Ex. D-2)), which he exceeded by $9,112.08. The Chancery Court awarded the Defendant $30,032.90 for money withdrawn from Guntown prior to the Divorce Decree. The Chancery Court reached this figure by applying the following calculations:

| Withdrawals: | |
| Don Humphries' Withdrawals | $21,512.08 |
| Transferred to H&H Wholesale | $11,180.42 |
| Less Authorized Withdrawals | $(12,400.00) |
| | -------------- |
| Total | $20,292.50 |
| | |
| Total Unauthorized Withdrawals | $20,292.50 |
| 8% Interest (Oct. 2003 – Dec. 2009) | $  9,740.40 |
| | -------------- |
| Total Owed | $30,032.90 |

(Ex. D-1, "Ex. C").

Lastly, the Chancery Court found that the Plaintiff had willfully and intentionally refused to comply with the Divorce Decree and other prior orders of the Chancery Court. Accordingly,

because of the Plaintiff's contempt, the court ordered the Plaintiff to pay the Defendant's attorney's fees ($7,837.50) and accountant fees and expenses ($1,297.50).

The total amount awarded to the Defendant in the Contempt Judgment was $212,906.91, plus interest at the rate of 8% per annum from the date of entry of the Contempt Judgment. This judgment amount matches the Proof of Claim filed by the Defendant in the Plaintiff's bankruptcy case.

## II.   CONCLUSIONS OF LAW

Exceptions to discharge are to be narrowly construed in favor of the debtor in order to effectuate the fresh start policy of the Bankruptcy Code. *Miller v. Abrams (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). The Defendant-counterclaimant, as the party seeking to establish that the debt is nondischargeable, bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

 As stated above, the Plaintiff seeks a declaration that the debt is not a domestic support obligation, and is therefore dischargeable in his chapter 13 case. The Defendant initially counterclaimed that (1) the debt is nondischargeable as a domestic support obligation, and/or (2) the debt is nondischargeable under § 523(a)(4) as a debt incurred through fraud or defalcation while acting in a fiduciary capacity. The Plaintiff's claim and the Defendant's first counterclaim are different sides of the same issue. As such, they will be addressed together in an analysis of §§ 523(a)(5) and (a)(15). The Court will then address the Defendant's § 523(a)(4) claim.

### A.  11 U.S.C. § 523(a)(5) and (a)(15)

Section 523 of the Bankruptcy Code includes two subsections pertaining to the dischargeability of claims arising from domestic relations. First, pursuant to § 523(a)(5), a

debtor may not receive a discharge of a domestic support obligation[4] ("DSO") owed to a former

spouse or child.  The separate subsection under which the Defendant chose to travel, (a)(15),

expands the category of debts excepted from discharge to include debts:

> (15) to a spouse, former spouse, or child of the debtor and **not of the kind
> described in paragraph (5)** that is incurred by the debtor in the course of a
> divorce or separation or in connection with a separation agreement, divorce
> decree or other order of a court of record, or a determination made in accordance
> with State or territorial law by a governmental unit;

11 U.S.C. §523(a)(15) (emphasis added).  In other words, (a)(5) debts are DSOs and (a)(15)

debts are all other debts owed to a former spouse or child arising from a divorce or other

domestic proceeding.  Both § 523(a)(5) and (15) illustrate "Congress balanc[ing] two public

policies ... the Bankruptcy Code's purpose of providing a fresh start to a deserving debtor; and

the importance of a debtor's obligations to his family." *In re Brooks,* 371 B.R. 761, 766 (Bankr.

N.D. Tex. 2007) (citing *Marrama v. Citizens Bank,* 549 U.S. 365, 381, 127 S.Ct. 1105, 1107,

166 L.Ed.2d 956 (2007)).

Although (a)(5) and (a)(15) may appear repetitive of one another, there is in an important

distinction between the two subsections - in a chapter 13 case, § 523(a)(15) debts are

dischargeable, while § 523(a)(5) debts are not.  Section 1328 of the Bankruptcy Code, pertaining

to a debtor's discharge upon completion of a chapter 13 plan, specifically provides that,

> … [T]he court shall grant the debtor a discharge of all debts provided for by the plan or
> disallowed under section 502 of this title, *except* any debt—
>
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C),
> (2), (3), (4), **(5)**, (8), or (9) of section 523(a).

11 U.S.C. §1328(a)(2) (emphasis added).  Notably missing are § 523(a)(15) debts.  Thus, only

those debts which are truly "supportive" in their nature – and properly categorized as (a)(5) debts

---

[4] "Domestic Support Obligation" is a defined term under the Bankruptcy Code.  § 101(14A)

– are nondischargeable. *Davidson v. Davidson (Matter of Davidson)*, 947 F.2d 1294, 1296-97 (5th Cir. 1991).

When determining whether or not a debt is a nondischargeable DSO, the bankruptcy court "is not inextricably bound to the labels placed on obligations by the parties to a domestic relations proceeding." *In re Sheffield*, 349 B.R. 484, 488 (Bankr. N.D. Miss. 2006). Rather, the Court may independently evaluate the divorce/separation decree. There is no bright-line rule by which to measure whether or not a debt is a DSO, but rather several factors to be considered. *Id.* at 488-89. The courts are not obligated to treat each factor equally, but may instead accord the appropriate weight to each, given the subjective facts of the case.

The Court in this case, however, is not required to weigh the factors to determine if the Defendant's claim is a DSO. At trial, the Defendant expressly disavowed any claim under § 523(a)(5). It is clear that in a chapter 13 case, the Bankruptcy Code excepts from discharge *only* those debts which fall under § 523(a)(5), and not those under (a)(15).[5] 11 U.S.C. §1328(a)(2). As this is a chapter 13 case and the parties agree that this is an (a)(15) debt, the Defendant's claim is dischargeable as a matter of law, unless discharge is barred by a different subsection of § 523.

**B.  11 U.S.C. § 523(a)(4)**

The Defendant also asserted at trial that her claim was nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. Section 523(a)(4) provides, in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)[6] of this title does not discharge an individual debtor from any debt—
. . . .

---

[5] There is an exception to this rule. If a debtor is awarded a hardship discharge under 11 U.S.C. § 1328(b), *all* debts that fall within §523(a) are nondischargeable. § 1328(c)(2). No hardship discharge has been sought in this case.

[6] Unlike § 523(a)(15) debts, § 1328(a) makes clear that § 523(a)(4) debts are excepted from a chapter 13 discharge.

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4).

The phrase "debt for" means "debt arising from" or "debt on account of." *Cohen v. de la Cruz,* 523 U.S. 213, 220-21, 118 S. Ct. 1212, 1217, 140 L. Ed. 2d 341 (1998). Accordingly, there are three separate types of debts rendered nondischargeable under § 523(a)(4): (1) debts resulting from fraud or defalcation while acting in a fiduciary capacity; (2) debts resulting from embezzlement; and (3) debts resulting from larceny. As the Defendant did not specify which subpart of § 523(a)(4) she was traveling under, the Court will address all three.

### 1. Fraud or Defalcation While Acting in a Fiduciary Capacity

Determining whether a debtor committed fraud or defalcation while acting in a fiduciary capacity is a two-step process. *In re Beveridge*, 416 B.R. 552, 570 (Bankr. N.D. Tex. 2009) (citing *Miller*, 156 F.3d at 602). First, it must be shown that the requisite fiduciary relationship existed prior to the particular transaction from which the debt arose. *See, e.g., In re Cross,* 666 F.2d 873, 879 (5th Cir. Unit B 1982); *In re Menendez,* 107 B.R. 789, 793 (Bankr.S.D.Fla.1989); *In re Valdes,* 98 B.R. 78, 80 (Bankr.M.D.Fla.1989). Second, some type of fraud or defalcation must have occured during the fiduciary relationship. *In re Chavez*, 140 B.R. 413, 422 (Bankr. W.D. Tex. 1992). Because the Court finds that no fiduciary relationship existed under § 523(a)(4), the Court never reaches the second step in the analysis.

In this context, the existence of a fiduciary relationship is a question of federal law. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011). For purposes of § 523(a)(4), the term "fiduciary" is distinct from the concept of a "fiduciary" under the common law. Rather, it is limited to instances involving express or technical trusts. *Shcolnik v. Rapid*

*Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012).   Constructive or *ex maleficio* trusts – those created to combat unjust enrichment – are excluded from the scope of §523(a)(4). *Tex. Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342 (5th Cir. 1998).  "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio.  He must have been a trustee before the wrong and without reference thereto." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934).  Accordingly, this Court must determine whether or not an express or technical trust, of the kind contemplated by §523(a)(4), existed between the parties so as to place the Plaintiff in a fiduciary capacity to the Defendant.

### a.  Duties as Former Spouse

In this case, nothing in the Divorce Decree itself implicitly or explicitly created a fiduciary relationship between the parties based on their status as former spouses.  The Divorce Decree did not designate the Plaintiff as a trustee, nor was any express or technical trust created by way of the document or divorce proceedings.  *Compare Pattie v. Pattie (In re Pattie)*, 108 B.R. 791 (Bankr. M.D. Fla. 1989) (no fiduciary duty existed where the divorce decree did not designate the debtor as trustee, nor establish an express or technical trust prior to the wrongdoing); *with In re Eichelberger*, 100 B.R. 861 (Bankr. S.D. Tex. 1989) (divorce decree specifically designating debtor as trustee with respect to the community property interest and specifically setting forth fiduciary duties to be performed established a trust relationship).  The fact that the Plaintiff may have been required to hold certain property for the Defendant does not create a fiduciary relationship sufficient for § 523(a)(4) purposes.  *Davis*, 293 U.S. at 333; *Tran*, 151 F.3d at 342-43.

A divorce decree ordering separation of marital assets does not in of itself create fiduciary capacity of the type contemplated under § 523(a)(4).  Considering the existence of fiduciary capacity, at least one circuit court of appeals has held that "as a general rule the exception to discharge in 11 U.S.C. § 523(a)(4) should not apply in connection with a property settlement agreement and a divorce decree." *Teichman v. Teichman (In re Teichman)*, 774 F.2d 1395, 1400 (9th Cir. 1985).  Only if the trust is specifically created in the divorce decree or if the trust arises as a matter of state law, will the requisite fiduciary relationship be created for purposes of § 523(a)(4).  Thus, while the Plaintiff's failure to abide by the Divorce Decree created a claim, the requisite fiduciary relationship was not created by the Divorce Decree.

### b.   Duties as Co-owners of Businesses

Although the Divorce Decree does not create a fiduciary relationship by virtue of each party being the former spouse of the other, a fiduciary relationship may still arise by virtue of the parties' status as co-owners of the businesses.  As stated above, the Chancery Court apportioned the Plaintiff and Defendant each a fifty-percent (50%) ownership interest in (i) H&H (ii) LNP, (iii) Budget Phone, and (iv) Chadco.    The Fifth Circuit Court of Appeals has recognized that although the scope of the concept of fiduciary under § 523(a)(4) is a question of federal law, state law may still be used to determine whether or not a trust obligation exists.  *In re Harwood*, 637 F.3d at 619-20.  Accordingly, this Court may look to Mississippi state law for guidance in determining whether or not a trust obligation exists by virtue of the parties being co-owners of the businesses.   As H&H was an incorporated entity, and LNP, Budget Phone and Chadco were not, this Court must consider state law pertaining to both corporations and partnerships.

### (i)  Partnership Duties – LNP, Budget Phone and Chadco

In Mississippi, "the association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." MISS. CODE. ANN. § 79-13-202(a).  Here, each party was awarded a one-half, undivided interest in each of the businesses (with the exception of Guntown).  (Ex. D-2, pg. 42).  The Chancery Court made clear that while the future dissolution of the businesses was possible, it did not see the need or benefit to immediately end the businesses.  The Chancery Court cited to *Messer v. Messer* to explain the decision to make the parties joint owners:

> [t]he decision leaves the parties with some flexibility to continue to hold the property as a potential investment and to dispose of the property by some mutually agreeable means in the near or distant future.

850 So.2d 161, 171 (Miss. Ct. App. 2003).

It is clear from the Divorce Transcript and the case law cited therein that the Chancery Court intended that, for at least some period following the divorce, those businesses that were still operating would continue to operate, with each party an equal partner.[7]  As such, the ownership structures of LNP, Chadco and Budget Phone qualify as "partnerships" under Mississippi law.  MISS. CODE ANN. § 79-13-101 ("'Partnership' means an association of two (2) or more persons to carry on as co-owners a business for profit formed under Section 79-13-202, predecessor law, or comparable law of another jurisdiction.").

State law dictates that "[t]he only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care…"  MISS. CODE ANN. § 79-13-404(a).  The duty of loyalty is limited to obligations:

> (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership

---

[7] This Court heard testimony that the only business still in operation at the time of the divorce was H&H.

14

business or derived from a use by the partner of partnership property, including
the appropriation of a partnership opportunity;
(2) To refrain from dealing with the partnership in the conduct or winding up of
the partnership business as or on behalf of a party having an interest adverse to
the partnership; and
(3) To refrain from competing with the partnership in the conduct of the
partnership business before the dissolution of the partnership.

MISS. CODE ANN. § 79-13-404(b).  The statute similarly delineates the scope of a partner's duty

of care: "[a] partner's duty of care to the partnership and the other partners in the conduct and

winding up of the partnership business is limited to refraining from engaging in grossly negligent

or reckless conduct, intentional misconduct, or a knowing violation of law."  MISS. CODE ANN. §

79-13-404(c).

Although Mississippi law may recognize these duties to the deemed partnership, not all

duties under state law are sufficient to fulfill the requisite fiduciary standard for §523(a)(4).  *See*

*Davis*, 293 U.S. 328.  As explained by the Fifth Circuit in *LSP Inv. Partnership v. Bennett (In re*

*Bennett)*:

A number of courts have addressed the issue of whether a partner generally owes
the type of fiduciary duty contemplated by section 523(a)(4) to his co-partners.
The courts are split on this issue with approximately half finding that such a
fiduciary duty is owed, and the other half finding that it is not.[8]

---

[8] Those courts finding that a fiduciary duty is owed includes: *See, e.g., Lewis v. Short (In re Short)*, 818 F.2d 693,
695-96 (9th Cir. 1987) (Washington law); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986) (California law);
*Longo v. McLaren (In re McLaren)*, 136 B.R. 705, 714 (Bankr. N.D. Ohio 1992); *Gravel v. Chris J. Roy, A Law
Corp. (In re Chris J. Roy)*, 130 B.R. 214 (Bankr. W.D. La. 1991); *Beebe v. Schwenn (In re Schwenn)*, 126 B.R. 351
(D. Colo. 1991); *Getaz v. Stewart (In re Stewart)*, 123 B.R. 817 (Bankr. W.D. Tenn. 1991); *Brown v. McKay (In re
McKay)*, 110 B.R. 764 (Bankr. W.D. Pa. 1990); *Susi v. Mailath (In re Mailath)*, 108 B.R. 290, 293-94 (Bankr. N.D.
Okla. 1989); *In re Guy*, 101 B.R. 961, 986-91 (Bankr. N.D. Ind. 1988); *In re Cramer*, 93 B.R. 764, 767-68 (Bankr.
M.D. Fla. 1988) *Lee v. Crosswhite (In re Crosswhite)*, 91 B.R. 156 (Bankr. M.D. Fla. 1988); *Stone v. Stone (In re
Stone)*, 90 B.R. 71, 79-80 (Bankr. S.D. N.Y.), *aff'd*, 94 B.R. 298, 302-03 (S.D.N.Y.1988), *aff'd*, 880 F.2d 1318 (2nd
Cir. 1989); *In re Dino*, 82 B.R. 184, 186 (Bankr. D. R.I. 1988); *In re Owens*, 54 B.R. 162, 164-65 (Bankr. D. S.C.
1984); *In re Kraus*, 37 B.R. 126, 129 (Bankr. E.D. Mich.1984). *See also In re Weiner*, 95 B.R. 204, 206-07 (Bankr.
D. Kansas 1989) (although no fiduciary relationship between partners generally, the sole managing partner had
responsibilities commonly associated with trustee and was therefore a fiduciary under section 523(a)(4)); *In re
Hurbace*, 61 B.R. 563, 565-66 (Bankr. W.D. Tex.1986) (holding that there was insufficient fiduciary relationship
between equal copartners to meet requirements of section 523(a)(4), but indicating, in dicta, that managing partner's
fiduciary duties probably sufficient).

Those Courts finding that no fiduciary duty is owed: *Rolley v. Spector (In re Spector)*, 133 B.R. 733
(Bankr. E.D. Penn.1991); *Blashke v. Standard (In re Standard)*, 123 B.R. 444 (Bankr.N.D.Ga.1991); *Sulphur
Partnership v. Piscioneri (In re Piscioneri)*, 108 B.R. 595 (Bankr. N.D. Ohio 1989); *Stahl v. Lang (In re Lang)*, 108

989 F.2d 779, 783-84 (5th Cir. 1993).

In *Bennett*, the Fifth Circuit held that the Uniform Partnership Act ("UPA")(adopted in both Texas and Mississippi), does not create the type of technical or express trust necessary to create a fiduciary relationship under § 523(a)(4).  989 F.2d at 785.  *See also Reiter v. Napoli (In re Napoli)*, 82 B.R. 378, 382 (Bankr. E.D. Pa. 1988); *In re Holman,* 42 B.R. 848, 850-51 (Bankr. E.D. Mo.1984); *In re Taylor*, 58 B.R. 849, 853 (Bankr. E.D. Va. 1986) (all finding that no provision of UPA creates the type of technical or express trust necessary to find fiduciary duty for purposes of § 523(a)(4)).[9]

### (ii) Shareholder Duties – H&H

There is no dispute that H&H was a corporation.  The Supreme Court of Mississippi has defined a closely-held corporation as a "business entity with few shareholders, the shares of which are not publicly traded." *Bros v. Winstead*, 129 So.3d 906, 918 (Miss. 2014) (citing *Fought v. Morris,* 543 So.2d 167, 169 (Miss.1989).

The only evidence presented to this Court indicates that each party was a 50% shareholder in H&H.  There was no evidence presented that either party served as an officer or director of H&H.  This is a somewhat unusual situation because there is no evidence of clearly defined roles within the corporation.  The lack of evidence complicates the issue, as the role a

---

B.R. 586 (Bankr. N.D. Ohio 1989); *Coleman v. Choisnard (In re Choisnard)*, 98 B.R. 37 (Bankr. N.D. Okl. 1989); *Medved v. Novak (In re Novak)*, 97 B.R. 47 (Bankr. D. Kan. 1987); *In re Lewis*, 94 B.R. 406, 410 (Bankr. E.D. Va. 1988); *In re Stone*, 91 B.R. 589, 594 (D. Utah 1988); *Dreyfoos v. Ryan (In re Ryan)*, 90 B.R. 554 (Bankr. S.D. Fla. 1988); *In re Braudis*, 86 B.R. 1001, 1004 (Bankr. W.D. Mo. 1988); *In re Clemens*, 83 B.R. 945, 951 (Bankr. N.D. Ohio 1988); *In re Napoli,* 82 B.R. at 382-83; *In re Elliott,* 66 B.R. 466, 467 (Bankr. S.D. Fla. 1986); *In re Holman,* 42 B.R. at 850-51.

[9] The *Bennett* court did find, however, that Texas state common law did create a sufficient basis for fiduciary capacity between managing partners and limited partners of limited partnerships.  *Id.* at 787 ("Texas law clearly and expressly imposes trust obligations on managing partners of limited partnerships and these obligations are sufficient to meet the narrow requirements of section 523(a)(4)."). *See also Ragsdale*, 780 F.2d at 796 (Ninth Circuit Court of Appeals finding similarly pursuant to California law).  There is no evidence in this case, however, that the parties were anything but equal, general partners.

16

party has within a corporation determines the scope of that party's fiduciary duties to the corporation as a whole, to fellow officers, and to shareholders.  Without any evidence or information on officer or director roles (if any), this Court may only consider shareholder fiduciary duties.

The Supreme Court of Mississippi has held that, "stockholders in close corporations must bear toward each other the same relationship of trust and confidence which prevails in partnerships…" *Fought*, 543 So.2d at 171 (Miss. 1989).  Thus, Plaintiff and Defendant generally owed to each other the same duties of care and loyalty as partners (explained above), which the Fifth Circuit has held does not create the heightened fiduciary relationship necessary under § 523(a)(4).  *See Bennett*, 989 F.2d at 785.

There are, admittedly, greater duties imposed on majority shareholders in order to protect the interests of the minority shareholder, as well as greater duties imposed on shareholders serving as officers and directors.  *See, e.g., Fought,* 543 So.2d at 171 (regarding the "freezing out" of a minority shareholder); *Derouen v. Murray*, 604 So.2d 1086 (Miss. 1992) (regarding fiduciary duties of a 50% shareholder to the other 50% owner when first shareholder also served as president and director of the corporation).  However, in the case before the Court, neither party was a majority shareholder nor, as stated above, was any evidence presented to show that either acted as a corporate officer.

Based solely on the parties' status as co-owners, the parties in this case did not owe a fiduciary duty to one another as contemplated under the heightened standard of § 523(a)(4).  To be clear, the Plaintiff does not have clean hands.  Plaintiff failed to abide by all the terms of the Divorce Decree, which resulted in the Contempt Judgment.  However, as a matter of law, there was no fiduciary duty owed by the Plaintiff to the Defendant for purposes of § 523(a)(4).

17

### 2. Embezzlement

The United States Supreme Court has held that "[e]mbezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895). Further, "[t]here must be proof of the debtor's fraudulent intent in taking the property." *In re Miller*, 156 F.3d at 603. In *Miller*, the Fifth Circuit relied on a Sixth Circuit case, which set forth the following elements of embezzlement, which a creditor must prove by a preponderance of the evidence: (1) creditor entrusted his property to the debtor; (2) debtor appropriated the property for a use other than that for which it was entrusted; and (3) circumstances indicate fraud. *Id.* (citing *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir.1996)).

The Contempt Judgment reveals that a portion of the judgment ($30,032.90) was specifically attributed as reimbursement for money withdrawn by Plaintiff from Guntown and (i) transferred to H&H, as well as (ii) money withdrawn from Guntown and kept by the Plaintiff for his own use. The withdrawals occurred sometime between the date of the parties' separation and the entry of the Divorce Decree. (Ex. D-1, pg. 9).

Analyzing the evidence admitted in this proceeding and set forth in the Contempt Judgment, the Court finds that these elements were satisfied with respect to at least a portion of the withdrawn funds.

First, this portion of the Contempt Judgment represents money entrusted to the Plaintiff by virtue of his position as an owner/operator of Guntown. While working at Guntown, he lawfully came into possession of funds paid to Guntown. As Defendant was an owner of Guntown, she had an interest in those funds.

18

Second, Plaintiff appropriated property for a use other than that for which it was intended.   While the Plaintiff was permitted to withdraw some money from the business, he exceeded his allotted salary.   According the Contempt Judgment, Plaintiff operated Guntown from the date or separation to the date of divorce.   During that time, the Plaintiff was authorized to withdraw $12,400.00 total for the given time period.   During the Chancery Court contempt proceedings, a court-appointed C.P.A. testified that an audit revealed withdrawals by the Plaintiff in the amount of $21,512.08, which is $9,112.08 beyond the amount he was authorized to withdraw.   (Ex. D-1, pg. 9).   The Chancery Court also found that the Plaintiff transferred $11,180.42 from Guntown to H&H, without permission and/or agreement of the Defendant as co-owner.

Third, the Court finds that the circumstances surrounding the withdrawals indicate fraud. Other bankruptcy courts have held that, in regards to the third element of embezzlement, "[f]raudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *Winn v. Holdaway (In re Holdaway),* 388 B.R. 767 (Bankr. S.D. Tex.2008) (quoting *In re Harrell*, 94 B.R. 86, 91 (Bankr. W.D. Tex. 1988)).   At trial, Defendant failed to rebut the evidence that he had intentionally exceeded the scope of his permitted withdrawals. There is no evidence that the Defendant was acting under an "erroneous belief of entitlement" which could negate a finding of fraudulent intent.   *In re Miller*, 156 F.3d at 603 (a finding that defendant acted wrongfully in misappropriating plaintiff's property does not include a finding of fraudulent intent; "[o]ne can wrongfully appropriate a trade secret while acting under an erroneous belief of entitlement.").

Given the finding that the Plaintiff embezzled at least a portion of company funds, the Court must calculate the nondischargeable portion.   First, as to the $11,180.42 withdrawn from

Guntown and transferred to H&H, the Court finds that the amount of this transfer was not actually embezzled. At the time of transfer, the parties were equal co-owners of Guntown. According to the Divorce Transcript, at the time of the transfer, the Defendant was the sole shareholder or stockholder in H&H. (Ex. D-2). Funds were taken from one company the parties owned equally and transferred to another company that the Defendant owned outright.[10] Accordingly, the transfer did not give rise to any debt to the Defendant, but instead was to her economic benefit. *Cf. In re Brady*, 101 F.3d at 1173 (holding that a debtor who took funds from jointly held account and transferred those funds to a corporation entirely controlled by the debtor had committed embezzlement as contemplated under the § 523(a)(4) exception to discharge).

Second, as to the $21,512.08 taken by the Plaintiff, the Chancery Court already found (and no evidence was presented to contradict this finding) that Plaintiff was entitled to withdraw up to $12,400.00 from Guntown. Accordingly, there can be no misappropriation of property that the Plaintiff was authorized to take. Plaintiff did exceed his allotted withdrawals by $9,112.08. However, the entire $9,112.08 does not represent funds embezzled. Setting aside the wisdom of withdrawing cash from Guntown at a time when the business was failing, Plaintiff, as equal co-owner at the time of the cash withdrawal, would still be entitled to 50% of any distributions to equity holders. Accordingly, only $4,556.04 – or 50% of the money in excess of what Plaintiff was authorized to take – represents property actually embezzled. Applying the 8% interest rate used by the Chancery Court, from October 1, 2003, to August 29, 2014, the Court finds that

---

[10] That the Defendant was subsequently awarded 100% ownership of Guntown in the Divorce Decree is of no consequence for purposes of analyzing Plaintiff's embezzlement. The granting of complete ownership of Guntown to the Defendant was for equitable distribution and allocation of property for purposes of the divorce, and has no bearing on ownership of the funds at the time of the withdrawals.

$8,533.40 of the Defendant's claim is nondischargeable pursuant to § 523(a)(4) as a debt arising from embezzlement.[11]

### 3.  Larceny

Federal common law defines larceny as a "felonious taking of another's personal property with intent to convert it or deprive the owner of same." *Smith v. Williams* (*In re Smith*), 253 F.3d 703, 2001 WL 498662, *2 (5th Cir. 2001)(unpublished)(citing *In re Barrett*, 156 B.R. 529, 533 n. 3 (Bankr. N.D. Tex. 1993)).  Larceny differs from embezzlement in that the original taking of the property in the case of embezzlement was lawful, or with the owner's consent, while in larceny, "the felonious intent must have existed at the time of the taking." *Moore*, 160 U.S. at 270.  Because the Plaintiff lawfully received the funds, but misappropriated thereafter, he is liable for embezzlement, not larceny.  "Since [the defendant] came into possession of [the plaintiff's property] lawfully, embezzlement, rather than larceny, is the § 523(a)(4) term which applies." *In re Miller*, 156 F.3d at 602 (citing *Great Am. Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)).

### 4.  Attorney's Fees

The U.S. Supreme Court has recognized that "[o]nce it is established that specific money or property has been obtained by fraud… 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S. Ct. 1212, 1216, 140 L. Ed. 2d 341 (1998).  The Eighth Circuit Court of Appeals has similarly held that, "[a]ncillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt." *In re Hunter*, 771 F.2d 1126, 1131 (8th Cir. 1985).

---

[11] Interest continues to accrue notwithstanding the provisions of § 506. *Gober v. Terra Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996)(interest on a nondischargeable debt is likewise nondischargeable).  Further, to be clear, this Court is not entering new money judgment, but instead is declaring a portion of the Contempt Judgment to be nondischargeable.  As such, interest will continue to accrue at the rate set forth in that state court judgment.

Accordingly, where a judgment is found to be nondischargeable pursuant to § 523(a)(4), an auxiliary award of attorney fees in that judgment is likewise nondischargeable. *Klingman v. Levinson*, 831 F.2d 1292, 1296 (11th Cir. 1987); *see also Assoc. Growers, Inc. v. Horowitz (In Re Horowitz),* 103 B.R. 786, 790 (Bankr. N.D. Miss.1989) (holding that an award of fees and costs is only excepted from discharge to the extent those fees and costs arose from nondischargeable portion of the judgment).

In the Contempt Judgment, the Chancery Court awarded the Defendant attorney's fees of $7,837.50 for prosecuting the Contempt Complaint as a whole.  (Ex D-1, pg. 11).   However, delineating what portion of attorney's fees is attributable to the nondischargeable portion of the Contempt Judgment is a difficult task.   Although it is tempting to conclude that the simplest method would be a pro rata approach, it would not be the correct approach.   Instead, in order to recover attorney's fees, the Defendant bears the burden of proving what portion of the fees is directly attributable to the nondischargeable portion of the Contempt Judgment. *In re Horowitz*, 103 B.R. at 791; *In re Thompson*, 511 B.R. 20, 33-34 (Bankr. D. Conn. 2014).

In this case, the Court has no evidence of any such apportionment. "Without a copy of [creditor's] original motion requesting costs and fees and a time study reflecting the number of hours billed and a description of the work performed, this Court is unequipped to make an informed apportionment of dischargeable and nondischargeable costs and attorney's fees." *Horowitz*, 103 B.R. at 791.  Given the presumption of dischargeability of debts, coupled with Defendant's failure to carry her burden of proof by preponderance of the evidence, the attorney's fee portion of the Contempt Judgment cannot be included in the amount held to be nondischargeable. *In re Weiss*, 235 B.R. 349, 360 (Bankr. S.D.N.Y. 1999); *In re Powers*, 385 B.R. 173, 181 (Bankr. S.D. Ohio 2008).

### III.   <u>CONCLUSION</u>

The question of whether or not the debt represents a DSO is easily resolved by the parties' agreement that the debt falls under §523(a)(15).  Defendant disavowed any claim under § 523(a)(5), and § 523(a)(15) debts are dischargeable in a chapter 13 case.  Second, as a matter of law as it relates to § 523(a)(4), Plaintiff owed no fiduciary duty to Defendant.  Larceny is inapplicable to the facts in this case.  The Defendant has proven, however, that a portion of the debt is nondischargeable as it arose from the Plaintiff's embezzlement of money from the parties' previously jointly-owned company.  Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that $8,565.36, plus interest accruing at the rate set forth in the Contempt Judgment, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). It is further,

**ORDERED** that the remainder of Defendant's claim shall be treated as a general unsecured claim and will be treated as similarly classified claims in any chapter 13 plan.

##END OF ORDER##